167 N.J. Super. 25 (1979)
400 A.2d 497
STUART WAGNER, PLAINTIFF-APPELLANT,
v.
TRANSAMERICA INSURANCE COMPANY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1978.
Decided January 29, 1979.
*28 Before Judges CONFORD, PRESSLER and KING.
Mr. Robert B. Silverman argued the cause for appellant.
Mr. James F. Supple argued the cause for respondent (Haggerty & Donohue, P.A., attorneys for respondent).
The opinion of the court was delivered by KING, J.A.D.
This case involves the construction of several sections of the New Jersey Automobile Reparation Reform Act of 1972 (commonly called the No-Fault Law): (1) the definition of "automobile" in N.J.S.A. 39:6A-2; and (2) the application of the language "benefits collectible under workers' compensation insurance" in N.J.S.A. 39:6A-6, the collateral source section.
In November 1976 plaintiff filed this complaint claiming the right to recover $2,357 in medical expenses allegedly incurred as a result of an April 5, 1974 two-car automobile accident in which he was injured. The $2,357 represented a bill for chiropractic treatment by a Dr. Nantista for injuries allegedly received in the accident. Defendant Transamerica Insurance Company (Transamerica) was the liability carrier on a standard garage keeper's liability policy insuring *29 plaintiff's employer, Kroll Motors, Inc. (Kroll) of Long Branch.
Plaintiff was a salesman for Kroll. The April 5, 1974 accident occurred when plaintiff was taking a new automobile, a Ford LTD, bearing dealer's plates, to show to a potential customer. The automobile was from the Kroll's inventory of new vehicles. As a result of his injuries, plaintiff commenced treatment with an orthopedic surgeon, Dr. Walsh, with his employer's authorization. Simultaneously, he embarked on a course of chiropractic treatment with Dr. Nantista, unauthorized by his employer.
Thereafter plaintiff received an award in the Division of Workers' Compensation for his work-related injury resulting from the 1974 accident. His attorney asserted no claim before the Division for the expense of the chiropractic treatment allegedly resulting from plaintiff's concededly work-related accident. After the compensation case was settled plaintiff brought a tort action against Bamford, the driver of the other car involved in the accident. The tort case was settled in July 1976. Plaintiff testified below, over objection, that he did not intend that the amount of the tort settlement include Dr. Nantista's bill for chiropractic treatment. Plaintiff said he would not have settled for the amount agreed upon if he was required to pay Dr. Nantista from the proceeds of the tort settlement.[1] Inferentially, and for purposes of this decision, we therefore assume that plaintiff did not claim Dr. Nantista's bill as part of his damages in the tort action.
Plaintiff now claims that the $2,357 chiropractic bill for treatment arising out of the 1974 automobile accident is payable as a Personal Injury Protection (PIP) medical expense benefit under Transamerica's policy insuring his employer, *30 Kroll, as required by N.J.S.A. 39:6A-4. This section requires that every liability policy insuring an automobile as defined in the No-Fault Law provide "payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident" to any occupant of the automobile without regard to fault.
Transamerica, whose garage keeper's liability policy does not contain the standard PIP endorsement, resists plaintiff's claim on two grounds, both of which were accepted by the trial court. The carrier asserts that the Ford LTD, as part of the dealer's inventory and stock-in-trade, was not an "automobile" as defined by N.J.S.A. 39:6A-2 and therefore PIP coverage was not compelled by law. The carrier further asserts that even if the Ford LTD was covered by the No-Fault Law, medical expense benefits under the PIP coverage are not payable to the plaintiff as a result of this concededly work-related automobile accident because of the collateral source bar of N.J.S.A. 39:6A-6, which excludes from coverage and "benefits collectible under workers' compensation insurance." The carrier contends that plaintiff's failure to claim the chiropractor's bill allegedly incurred for injuries received in this work-related accident before the Division of Workers' Compensation now bars any recovery of PIP benefits.
For the following reasons we conclude that the dealer's passenger vehicle was covered under the No-Fault Law and that basic PIP benefits must be provided under defendant's policy. However, we agree with the trial court that plaintiff's failure to assert his claim in the Division of Workers' Compensation for the alleged reasonable expense of treatment by Dr. Nantista resulting from this work-related accident bars any right to recover the amount of the bill as PIP benefits in this subsequent action on the policy.
We conclude that the initial question of whether the Ford LTD passenger vehicle owned by plaintiff's employer as part of his new-car inventory is covered by the *31 No-Fault Law is resolved by the plain meaning of the statute's definitional section. N.J.S.A. 39:6A-2(a) states:
As used in this act:
a. "Automobile" means a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pick-up body, a delivery sedan or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching. An automobile owned by a farm family co-partnership or corporation which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger automobile owned by two or more relatives resident in the same household. (Emphasis added.)
The vehicle involved in the present case was a private passenger automobile. It was neither used as a public or liveried conveyance for passengers nor was it rented to others with a driver. Transamerica contends that the Legislature really intended the No-Fault Law to apply only to vehicles used for personal and family purposes in contrast to vehicles used for commercial purposes. But such an intent is not evident from the language used in the statute. Motorcycles, commercial trucks, taxicabs, chauffeured rentals, and buses are excluded from the No-Fault Law, but we perceive no legislative design to exclude private passenger vehicles commercially owned and used in business pursuits. Support for our conclusion is found in Iavicoli, No Fault & Comparative Negligence in New Jersey (1973), § 41 at 96 wherein the author, who served as counsel to the legislative commission which drafted the No-Fault Law as part of the reform package, states:
Note well that the definition of automobile includes all private passenger automobiles except ones used for public or livery conveyance and automobiles rented with a driver. Therefore, if an individual or company owns an automobile used in his profession or its *32 business, that automobile must maintain the above mentioned [PIP] coverage.
The legislative design to include pick-up trucks, panel trucks and campers where not customarily used for commercial purposes was not accompanied by any language suggestive of a total personal/commercial dichotomy for coverage purposes. We will not as a matter of interpretation superimpose such a design on the statute. Transamerica's garage keeper's liability policy is therefore compelled by the provisions of N.J.S.A. 39:6A-4 to provide PIP coverage for private passenger vehicles owned by its insured, Kroll, even though these vehicles are part of commercial inventory.
Plaintiff contends that N.J.S.A. 39:6A-6 captioned "Collateral Source" does not bar his right to recover the amount of the bill for chiropractic treatment allegedly necessitated by his work-related accident. This section in pertinent respect states:
The benefits provided in section 4 a., [medical expense benefits]... shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workers' compensation insurance, employees temporary disability benefit statutes and medicare provided under Federal law, shall be deducted from the benefits collectible under section 4 a., * * * [Ibid.]
Plaintiff sought no authorization from his employer for the chiropractic treatment and did not file a motion in the Division pursuant to N.J.S.A. 34:15-15 to obtain such authorization. See Benson v. Coca Cola Co., 120 N.J. Super. 60 (App. Div. 1972). Nor did he claim the chiropractor's bill in the successfully settled tort action. N.J.S.A. 39:6A-12 does not bar the admissibility of a medical bill in evidence in the tort action unless the bill is "collectible or paid" under the PIP medical benefits section, the very question now before us.
Plaintiff's contention here, in effect, seems to be that he has the option to recover those medical expenses reasonably *33 related to his work-connected accident in the proceeding of his choice, i.e., either in the workers' compensation claim, the third-party tort claim, or the first-party PIP claim, and that his exercise of this option is harmonious with the expressed legislative scheme. He contends that the language "collectible under workers' compensation" in N.J.S.A. 39:6A-6 means only those amounts actually paid by the employer in the Division of Workers' Compensation.
In the context of the facts here presented, where the workers' compensation claim was asserted first and actually went to final judgment before the PIP claim was ever presented, we disagree with plaintiff's contention. We conclude that the Legislature intended by the use of the word "collectible" more than those benefits actually paid in the Division prior to the time the PIP claim is asserted. The intention was to exclude from the PIP recovery those medical benefits which were legally capable of being recovered in the Division of Workers' Compensation if a claim had been properly presented. Again Iavicoli, supra, § 13 at p. 44 offers a clue to the legislative intent:
The Act provides that medical expense benefits shall be paid without regard to payments from collateral sources except that benefits collectible from workers' compensation insurance, temporary disability benefits and medicare shall be deducted from the benefits that are collectible under the benefit provisions of the Act. The emphasis is upon the language "benefits collectible". The injured person cannot elect under which coverage he wishes to be paid. If there are collectible workmen's compensation, temporary disability, or medicare benefits, the benefits under the Act are reduced by such collectible amount. (Emphasis added.)
We hasten to add here that our ruling today relates only to the present situation where the workers' compensation claim was asserted first and actually went to judgment before the PIP claim was presented. We do not here consider the situation where the PIP claim was asserted first and the workers' compensation claim was made thereafter or was only a prospective possibility, as discussed in Solimano v. Consolidated *34 Mutual Ins. Co., 146 N.J. Super. 393 (Law Div. 1977). We express neither approval nor disapproval of the result reached in the Solimano case, or in the several other trial court cases dealing with PIP claimants who were eligible for, but had not claimed, temporary disability benefits. Compare Toppi v. Prudential Insurance Co. of America, 153 N.J. Super. 445 (Dist. Ct. 1977) with Frazier v. Liberty Mutual, 150 N.J. Super. 123 (Law Div. 1977). Our opinion on the issues treated by these cases must await a proceeding in which they are squarely before us.
Under the Workers' Compensation Act, N.J.S.A. 34:15-1 et seq. the employer is required to "furnish ... such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury." N.J.S.A. 34:15-15. Under the PIP statute the automobile liability insurance carrier is liable for the "payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." N.J.S.A. 39:6A-4(a.) These two statutes, although not identically worded, obviously treat with coextensive medical benefits. N.J.S.A. 39:6A-6, in requiring the deduction of collectible PIP benefits, is a clear legislative mandate that workers' compensation should be the ultimate source for recovery of the medical expenses of claimants injured in compensable automobile accidents. To allow this plaintiff the option of workers' compensation or PIP as a source of recovery would circumvent this clear legislative scheme.
We conclude that where a claimant injured in an automobile accident makes no effort to assert the right to payment of his ostensibly compensable medical expenses in the workers' compensation proceedings prior to final judgment therein, he is barred from making a PIP claim thereafter for such expenses.
Affirmed.
NOTES
[1] Unfortunately, neither party has provided any record of the workers' compensation or tort cases. Therefore our information on these matters is restricted to plaintiff's testimony below.